Reese, J.
delivered the opinion of the court.
This is a bill- the object of which is to ascertain and define the boundaries of certain grants for land belonging to the complainant, and to have declared void certain grants of the defendant, which are alleged to cover the same land covered by the elder grants of the complainant. The chancellor pronounced a decree defining what he deemed the proper mode of surveying the grants of the complainant, and as a consequence thereof declaring the extent to which the younger grants of the defendant were to be held void. The defendant has appealed to this court.
The rights of the parties in this controversy will be determined, when it is ascertained in what manner the grant of complainant of 1787, for thirty-eight hundred and forty acres, and his grant of 1792, for two hundred and seventy-four acres, should be surveyed, and this will depend upon the calls of the grants in connexion with the proof upon the *399 record. Tbe first mentioned grant describes the land as follows: “A tract of land containing 3,840 acres, lying and being in the county of Davidson, in a large bend of Cumberland river, on the north-west side, opposite the mouth of Richland creek; beginning at a large sycamore and sugar, opposite the lower end of the first timbered island in said river, below Heaton’s Station, and runs west eighty-five chains to an ash; thence north 144 chains 90 links to a stake; thence west 90 chains to a beach; thence,” &c. There seems to have been no actual survey of the land before the grant issued. The beginning corner is well ascertained; but if from thence a line be run 85 chains west, and thence north 144 chains 90 links, as called for, the second line, or line north, will, in the distance called for, cross the river to the south side of it; and in that event the grant will interfere less with the younger grants of the defendant, than if it be confined to the bend of the river and the side of it, where the beginning comer is found. The defendant insists, therefore, that the first line should have been run west its full distance, and then the second line should be run the course and distance called for; although in doing so it crosses the river. And the complainant insists, that the first line should be run west only so far as that the second call north shall touch the river in its course, but not to cross it. In this latter mode, the chancellor decreed that the running should take place. For the complainant, it is insisted, that the general and directory calls in the grant for a large bend of the river, for the north-west side, and for land lying opposite the mouth of Richland creek, are so certain and definite, that fi;om their proper force and operation, they might limit and circumscribe the survey to the bend of the river and its north-west side, notwithstanding the special and locative calls in the fii’st and second lines of the grant would cross the river. The defendant, upon this point, insists upon the authority of the case of the lessee of Roberts & Co. vs. Cunningham, Martin and Yer. Rep. 68, and the case of Wright vs. Mayberry, 9 Yer., in which that case is referred to, relied on and approved. In the first case, the general or directory calls were, “lying on Spring and Cedar creeks on the south side of Cumberland river;” and yet,' in *400 tbatcase, in obedience to the special and locative calls for course and distance, the court adjudged that .the' .lines might cross to the north side of Cumberland river. In the other case, the directory call was, “lying on both sides of 'Beaver Dam creek.” But the course and distance of the special and locative calls did not reach to the creek. • So the court- held that the land should' lie upon one side of the creek only. The' grounds upon which the principle of these cases -is placed by the court, are fully discussed ‘ in' both, and elaborately in the one first named.. It is not necessary here to quote the reasoning in either case. The doctrine is a familiar one. It was not new in 1827, when the first named case was decided. It-had always been recognized and enforced in Tennessee; and no accumulation of general and directory calls can vary the application of the principle. So that, if this case turned upon the question merely of the prevalence and controlling operations of -the directory calls, on the one hand, or the special and locative calls , upon the other, the second line .of the survey would have to cross the river.
. But it is not by force of the special calls, for course and distance, upon the face of a grant, solely and exclusively, that a grant is held to receive a precise and definite location. The grant may refer to some thing extrinsic, as to the plat and certificate of survey which accompanies or is annexed to it, which shall have, not a directory, but locative operation in determining its precise limits. The plat and certificate of survey accompanying the grant before us, and to which the grant refers, represents the 3840 acre tract as lying in the bend of Cumberland river, and upon one side of it only. This will have the legal effect to fix the tract described by the grant in that manner. This question in 1815, and again in 1829, underwent much discussion and full consideration in the Supreme Court of the United States, in. the case of McIver’s lessee vs. Walker and others,-reported in 9th Cranch and 4th Wheaton. The principle decided in that case is, “that if a patent refer to a plat annexed, and in that plat a water course be laid down as running through the land, the tract must be so surveyed as to include the water course, and to conform as nearly as may be to the -plat, although the lines *401 thus run do not correspond with the courses and distances mentioned in the patent; and although neither the certificate of survey nor the patent calls for the water course.” It is not necessary here again* that we should quote any portion of the reasoning of the court. For, although it was a question. of local law for the authoritative determination of which our community would in general look to our own local tribunals, yet, in this instance, the well considered decision of that eminent court, received the sanction and adoption of our own tribunals, and has been acted upon and enforced as the law of the land ever since. This case is stronger than that in Cranch and Wheaton, in favor of the effective operation of the plat in giving location to the tract of land granted; for both the grant and the plat call for the river, for the northwest side of it, and for the bend; and the plat shows that the lines of the survey were not to cross the river. The survey of this tract, therefore, must be made- in the manner decreed by the chancellor.
The second tract, or that for two hundred and seventy-four acres, calls to begin at a poplar marked W. R., James McCrory’s south-west corner. If a poplar marked W. R. had been found and proved as the actual beginning corner, made at the time of the surevy for that purpose, it would have been held the proper beginning, although McCrory’s south-west corner had been elsewhere; but this not being the case, Mc-Crory’s south-west corner, wherever ascertained, is the beginning corner of this tract. The second line of the survey, calling to run south to the Cumberland river, was properly and necessarily dropped by the chancellor, because the preceding call for an east course had already reached the river; the balance of the survey was properly ordered by the chancellor, except the last or closing line, where the call is, north 17 chains 50 links, to the beginning. Here the survey should have been run to the beginning, although the actual course would have been, perhaps, north-east; but the chancellor supplied a line, by running first north and then east, to the beginning. In this respect we think he erred, and to that extent his decree will be modified and reformed; in other respects it will be affirmed.